```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
KEITH MCALLISTER,

                Petitioner,           MEMORANDUM & ORDER
                                      08-CV-4003 (JS)

        - against -

CALVIN RABSATT,

                Respondent.
----------------------------------X
APPEARANCES:
For Petitioner:    Keith McAllister, Pro se
                   200 Monitor Street
                   Westbury, NY 11590

For Respondent:    Kathleen M. Rice, Esq.
                   District Attorney, Nassau County
                   262 Old Country Road
                   Mineola, NY 11501
```

SEYBERT, District Judge:

Pending before the Court is Petitioner Keith McAllister's ("McAllister") Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2006). For the reasons stated below, the petition is DENIED.

## BACKGROUND

I. Factual Background

The following facts and assertions were obtained from the Petition ("Pet."), trial transcript ("T."), and sentencing minutes ("S."):

Officer Jeffrey Raymond ("Raymond") has worked as a police officer with the Nassau County Police Department since

August 1997. (T. 198-99.) On August 21, 2005, at approximately 12:45 a.m., Raymond was working undercover, conducting narcotics surveillance in New Cassel, New York (T. 201-03), when he observed Petitioner walking down the street carrying a type of glass pipe that is sometimes used to smoke crack cocaine (T. 205: 13-16.) As Raymond exited his unmarked vehicle and approached Petitioner, McAllister shattered the pipe on the ground. (T. 205-06.) Petitioner admitted to Raymond that the pipe was a crack pipe. (T. 219:13-16.) Raymond then noticed a six-inch silver knife clipped to McAllister's front right pocket. (T. 206:17-25.) Raymond took the knife and applied centrifugal force, allegedly causing the blade to release and lock into place. (T. 206-207.) Raymond concluded that the knife was a gravity knife and placed Petitioner under arrest. (T. 207.)

At trial in the Supreme Court of the State of New York, Nassau County, McAllister was charged with criminal possession of a weapon in the third degree. (T. 170-71.) He was also charged with burglary in the first degree and assault in the third degree for incidents unrelated to the weapon charge. (T. 170-71.) During the proceedings, the People entered into evidence the knife that Raymond had confiscated from McAllister. (T. 210-11.) Raymond demonstrated for the jury how he had held the knife in his right hand and applied

2

centrifugal force downward to open the blade and lock it into position, thereby concluding that it was a gravity knife. (T. 211:8-14.)

McAllister's counsel did not call any witnesses (T. 354:3-6) and did not address the weapon charge during summations (T. 357-77). As the judge prepared to call in the jurors to instruct them on the charges, McAllister's attorney submitted to the court two cases in support of the claim that the knife was not a gravity knife. (T. 392-93.) The People contended that the cases did not involve gravity knives and that the type of knife McAllister possessed at the time of his arrest was a question for the jury. (T. 393:9-17.) The court denied the defense's application to consider the cases (T. 393:18), and proceeded to instruct the jury on the charges. (T. 418-19.)

The jury found McAllister guilty of criminal possession of a weapon in the third degree and acquitted him of the other two charges. (T. 430:1-12.) On June 29, 2006, McAllister moved to set aside the verdict pursuant to N.Y. PENAL LAW § 330.30 (McKinney 2005). (Pet. 2.) The motion was denied (Pet. 2), and on August 15, 2006, McAllister was sentenced to a prison term of three-and-one-half to seven years. (S. 7:1-9) In addition, the court ordered McAllister to pay a mandatory $250 surcharge, a $50 DNA fee, and a $20 crime victim assistance fee. (S. 7:11-14.)

II. Procedural History

McAllister appealed the judgment to the Supreme Court of the State of New York, Appellate Division, Second Judicial Department ("Appellate Division") on August 23, 2006, and thereafter submitted an application for in forma pauperis status. (Aff. Opp'n Pet. Writ Habeas Corpus ¶ 5.) On October 25, 2006, the Appellate Division provided McAllister with court-appointed counsel. (Aff. Opp'n Pet. Writ Habeas Corpus ¶ 5.)

On January 15, 2008, the Appellate Division affirmed the judgment of the trial court. People v. McAllister, 47 A.D.3d 731, 731 (App. Div. 2008). The Appellate Division found that (1) the evidence was legally sufficient to establish beyond a reasonable doubt that McAllister possessed a gravity knife, and the jury's verdict was not against the weight of the evidence; (2) the trial court correctly designated McAllister a second felony offender; (3) and the trial court properly denied McAllister's motion to suppress his statement to the police, which McAllister claims he provided while high on crack cocaine. Id. at 731–32.

On February 23, 2008, McAllister submitted to the New York Court of Appeals an application for leave to appeal all of the issues raised before the Appellate Division. (Appellant's Application for Leave to Appeal.) The Court of Appeals denied McAllister's application on May 13, 2008. People v. McAllister,

10 N.Y.3d 866, 890 N.E.2d 256, 860 N.Y.S.2d 493 (2008). In a letter dated June 2, 2008, Petitioner, acting pro se, asked the Court of Appeals to reconsider his application. (Criminal Leave Application Re-Consideration.) McAllister asserted that his appointed counsel failed to adequately present the claim that the evidence was legally insufficient to convict him of the weapon charge. (Criminal Leave Application Re-Consideration.) The Court of Appeals denied McAllister's application on August 4, 2008. People v. McAllister, 11 N.Y.3d 738, 894 N.E.2d 661, 864 N.Y.S.2d 397 (2008).

Petitioner filed this Petition on September 22, 2008, seeking relief only on the ground that the evidence was legally insufficient to establish that the knife he possessed at the time of his arrest was a gravity knife. (Pet. 2-3.)

## DISCUSSION

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254 (2006), sets forth the requirements that state court defendants must meet when applying for federal habeas corpus relief.

I. Petitioner's Status as a Parolee

A district court may consider a petition for writ of habeas corpus if the individual seeking relief is in custody. See 28 U.S.C. § 2254(a) (2006). If a petitioner is on parole, the custody provision of the habeas statute is still deemed

satisfied, provided that the petitioner was incarcerated at the time the court received the habeas petition. Spencer v. Kemna, 523 U.S. 1, 7, 118 S. Ct. 978, 983, 140 L. Ed. 2d 43 (1998).

Additionally, a petitioner's parole does not render the petition irrelevant as a result of the petitioner's failure to fulfill the Constitution's case-or-controversy requirement. U.S. CONST. art. 3, § 2. The Supreme Court has held that a parolee's petition will always satisfy this requirement because the "restriction imposed by the terms of the parole constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." Id. at 7 (internal parentheses omitted). Thus, Petitioner's status as a parolee does not render his Petition moot and the Court may proceed with its review.

II. Standard of Review

Federal courts will not grant an application for a writ of habeas on any claim already adjudicated on the merits in state court proceedings, unless those proceedings resulted in an outcome that was (1) "contrary to, or involved an unreasonable application of, clearly established federal law" as set forth by the Supreme Court, or (2) the state proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (2006).

The requirement that the state court adjudicated the claim on the merits means that the state court resolved the issue based on the substance of the claim, as opposed to procedural or other grounds. Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001). But it does not mean that the state court needs to reveal the thought process behind its rejection of the petitioner's arguments. Id. Rather, a federal court will find that a state court adjudicated a claim on the merits provided that the state court "(1) dispose[d] of a claim 'on the merits,' and (2) reduce[d] its disposition to judgment." Id. at 312.

If the state court decided the claim on the merits, a federal court will then consider whether the outcome was contrary to, or unreasonably applied, federal law. 28 U.S.C. § 2254(d) (2006). A "contrary" outcome means that the state court "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases,'" or "'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Penry v. Johnson, 532 U.S. 782, 792, 121 S. Ct. 1910, 1918, 150 L. Ed. 2d 9 (2001) (quoting Williams v. Taylor, 529 U.S. 362, 405–06, 120 S. Ct. 1495, 1522, 146 L. Ed. 2d 389 (2000) (O'Connor, J., concurring)). An "unreasonable" application of the law does not mean that a federal court may grant habeas relief based solely on its determination that the

7

state court incorrectly applied federal law. Id. at 793 (citing Williams v. Taylor, 529 U.S. 362, 410–11, 120 S. Ct. 1495, 1522, 146 L. Ed. 2d 389 (2000) (O'Connor, J., concurring)). Rather, the state court's flawed application of the law must also be objectively unreasonable. Id.

If the state proceedings did not result in a decision that differed from, or improperly applied, federal law, a petitioner may still prevail if the outcome was grounded on "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2) (2006). But the state court's determination of a factual issue is "presumed to be correct" and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (2006).

III. Petitioner's Legal Sufficiency Claim

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368 (1970). A federal court charged with reviewing a state court decision is thus obligated to consider whether the evidence provided reasonably supports the conviction. Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 2788–89, 61 L. Ed. 2d 560 (1979). But the federal court

need not find that it would have reached the same conclusion as that of the state court. Id. at 318-19 (citing Woodby v. INS, 385 U.S. 276, 282, 87 S. Ct. 483, 486, 17 L. Ed. 2d 362 (1966)). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. In other words, a petitioner is entitled to habeas relief only if the evidence is such that no rational jury possibly could have found the petitioner guilty beyond a reasonable doubt. Id. at 324.

When the petitioner seeks habeas relief based on the alleged insufficiency of the evidence, the petitioner "bears a very heavy burden." Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993) (quoting United States v. Rivalta, 892 F.2d 223, 227 (2d Cir. 1989) (internal quotation marks omitted). To determine whether this burden is met, a federal court will rely on state law to define the elements of the crime. Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999).

According to New York Penal Law, an individual is guilty of criminal possession of a weapon in the third degree if the individual is guilty of certain offenses that constitute criminal possession of a weapon in the fourth degree, and the individual was previously convicted of a crime. N.Y. PENAL LAW § 265.02(1) (McKinney 2008). An individual is guilty of criminal

possession of a weapon in the fourth degree if the individual possesses a gravity knife. N.Y. PENAL LAW § 265.01(1) (McKinney 2008). New York Penal Law defines a gravity knife as "any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device." N.Y. PENAL LAW § 265.00(5) (McKinney 2008).

At trial, the People entered Petitioner's knife into evidence and Raymond demonstrated how he had determined that the knife possessed by Petitioner it was a gravity knife by using centrifugal force to open the knife and lock the blade into place. (T. 210-11.) The jury found the evidence sufficient to convict Petitioner of criminal possession of a weapon in the third degree. See People v. McAllister, 47 A.D.3d 731, 731 (App. Div. 2008). The Appellate Division agreed that the evidence was legally sufficient and held that the verdict was not against the weight of the evidence. Id.

Petitioner does not allege that the knife entered into evidence was a different knife than the one he possessed at the time of his arrest. Rather, Petitioner contends that the knife is not a gravity knife and is a folding knife (Pet. 2.), possession of which does not constitute criminal possession of a weapon in the third degree. See N.Y. PENAL LAW § 265.02(1)

(McKinney 2008). Unlike a gravity knife, the blade of a folding knife does not open and lock into place as a result of the force of gravity. (Pet. 2.) Although Raymond appeared to open the knife at trial by applying centrifugal force, Petitioner contends that Raymond's demonstration "simply used an abnormal and sly way of opening the 'folding knife', to strengthen the District Attorney case." (Pet. 3.)

As a practical matter, it is difficult for law enforcement agents to determine with certainty whether a particular knife is a gravity knife. See Merring v. Town of Tuxedo, No. 07-CV-10381, 2009 WL 849752, at *10–11 (S.D.N.Y. Mar. 31, 2009) (explaining that the police chief's ability to release the blade by simply flicking his wrist justified the plaintiff's arrest based on his alleged possession of a gravity knife, even though the knife may not actually have been a gravity knife). In United States v. Irizarry, the defendant was arrested after he was found carrying a Husky Sure-Grip Folding Knife ("Husky"). 509 F. Supp. 2d 198, 200-01 (E.D.N.Y. 2007). While the defendant, a U-Haul employee, alleged that he purchased the knife for work purposes, the police officer concluded that it was a gravity knife. Id. At trial, the officer demonstrated how to open the Husky by applying centrifugal force. Id. at 204. However, the court concluded that the Husky was not a gravity knife, and despite the

officer's ability to open it using centrifugal force, "it was obviously not designed to be opened in this fashion and does not readily open through such force." Id. at 210. Thus, Petitioner's contention that a folding knife could be mistaken as a gravity knife is not without merit.

However, even if Petitioner's knife was a folding knife, his Petition fails to provide convincing evidence to rebut the presumption that the state court's factual determination was correct. 28 U.S.C. § 2254(e). So while it is plausible that the two types of knives could be confused, Petitioner fails to show that no rational trier of fact could have determined that his knife was a gravity knife. The jurors were instructed on the weapon charge and the definition of a gravity knife (T. 418-19), and they watched as Raymond used one hand to apply centrifugal force and release the blade. (T. 211:8-14.) Therefore, the Court concludes that a rational jury could have found McAllister guilty beyond a reasonable doubt of criminal possession of a weapon in the third degree.

## CONCLUSION

Petitioner has failed to adequately demonstrate legal insufficiency by showing that no rational jury could have found him guilty beyond a reasonable doubt. Accordingly, the Petition for writ of habeas corpus is DENIED, and the Court will not

issue a certificate of appealability.  The Clerk of the Court is directed to mark this matter CLOSED.

                                  SO ORDERED.

                                <u>/s/ JOANNA SEYBERT</u>
                                Joanna Seybert, U.S.D.J.

Dated:    August 4, 2010
           Central Islip, New York